IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELBA TAYLOR, et al.,     *

  Plaintiffs,       *

v.            *    Civil Action No. GLR-26-402

UNITED STATES DEPARTMENT  *
OF EDUCATION, et al.,
             *
  Defendants.
             *

            ***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Plaintiffs Melba Taylor, Encore Associates, LLC, David Carroll, Jim Howard, Timothy Jones, National Association of Blind Merchants, and National Federation of the Blind, Inc. (collectively, "Plaintiffs") and Intervenors Oklahoma Department of Rehabilitation Services and the State of Hawaii, Department of Human Services' (together, "Intervenors") Joint Motion for Summary Judgment (ECF No. 38), and Defendants United States Department of Education and Secretary of Education Linda McMahon's (together, "Defendants") Motion to Dismiss or, in the alternative, Cross-Motion for Summary Judgment (ECF No. 44). The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant Plaintiffs' and Intervenors' Joint Motion for Summary Judgment and deny Defendants' Cross-Motion for Summary Judgment.

## I.  INTRODUCTION

On December 23, 2025, Secretary of Education Linda McMahon ("Secretary McMahon") approved a limitation of the Randolph-Sheppard Act's priority for blind vendors as applied to the Department of the Army's dining facility contracts. Secretary McMahon found that the Randolph-Sheppard Act created higher costs, arbitration delays, and performance issues that hindered the Department of the Army's ability to act "swiftly, efficiently, and cost-effectively" in procuring and maintaining dining facility contracts, which negatively impacted "the availability and quality of food options for the nation's warfighters." 34 CFR Part 395 Limitation of the Randolph-Sheppard Vending Facility Program Priority for the Department of the Army ["Sec'y Limit"], 90 Fed.Reg. 60078-01, 60078–79 (Dec. 23, 2025). Plaintiffs are four blind vendors and licensees, one limited liability company operated by one of the blind vendors, and two organizations of blind members. Intervenors are two State licensing agencies. Plaintiffs and Intervenors challenge this limitation, arguing that Secretary McMahon's action should be held unlawful and "set aside" under the Administrative Procedure Act.

## II.  BACKGROUND

### A.  Statutory and Regulatory Framework

The Randolph-Sheppard Act ("Act"), originally enacted in 1936 and amended in 1954 and 1974, aims to provide blind persons with remunerative employment, increased economic opportunities, and opportunities for self-support. 20 U.S.C. § 107(a). Thus, the Act authorizes blind persons to operate vending facilities on any Federal property. Id. "Vending facilities" include automatic vending machines, cafeterias, snack bars, cart

services, shelters, counters, and other appropriate equipment deemed necessary for the sale of food, beverages, tobacco products, confections, newspapers, and other State-approved articles. Id. §§ 107a(a)(5), 107e(7).

The Act requires federal agencies to give "priority" to blind persons who are licensed by a State agency when the agency is authorizing the operation of vending facilities on Federal property. Id. § 107(b). The Act essentially establishes a two-tier structure: the Secretary of Education (the "Secretary") designates State licensing agencies ("SLAs"), and those agencies license blind vendors. Id. § 107a(a)(5).

The Act grants the Secretary the authority to promulgate regulations designed to ensure that "(1) the priority . . . is given to such licensed blind persons . . . , and (2) wherever feasible, one or more vending facilities are established on all Federal property to the extent that any such facility or facilities would not adversely affect the interests of the United States." Id. §§ 107(b)(1)–(2).

Further:

> Any limitation on the placement or operation of a vending facility based on a finding that such placement or operation would adversely affect the interests of the United States shall be fully justified in writing to the Secretary, who shall determine whether such limitation is justified. A determination made by the Secretary pursuant to this provision shall be binding on any department, agency, or instrumentality of the United States affected by such determination. The Secretary shall publish such determination, along with supporting documentation, in the Federal Register.

Id. § 107(b).

The Act also delineates the procedure to resolve grievances and conduct arbitration. There are two forms of grievances discussed in the Act. First:

> Any blind licensee who is dissatisfied with any action arising from the operation or administration of the vending facility program may submit to a State licensing agency a request for a full evidentiary hearing, which shall be provided by such agency in accordance with section 107b(6) of this title. If such blind licensee is dissatisfied with any action taken or decision rendered as a result of such hearing, he may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

Id. § 107d-1(a). Second:

> Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder (including a limitation on the placement or operation of a vending facility as described in section 107(b) of this title and the Secretary's determination thereon) such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

Id. § 107d-1(b).

**B.     Agency Action and Procedural History**

On July 11, 2025, Secretary of Defense Pete Hegseth ("Secretary Hegseth")[1] sent a written request to Secretary McMahon, asking her to approve a limitation exempting the Department of Defense, specifically Army dining facilities, from the requirements

---

[1] The Court notes that as of September 2025, President Trump signed Executive Order 14347, which authorized the Secretary of Defense to use an additional secondary title—the Secretary of War. Buckler v. Hegseth, No. 3:23-CV-00316-DCG, 2026 WL 377130, at *1 n.2 (W.D.Tex. Jan. 26, 2026); see also Exec. Order No. 14,347, Restoring the United States Department of War, 90 Fed. Reg. 43,893 (Sept. 5, 2025).

of the Act. (Admin. Rec. at 20, ECF No. 31-2). There are twenty-four Army Dining Facility contracts ("DFAC contracts") across twenty-two installations. (Id. at 33). Secretary Hegseth asserted that the Act impeded the Department of Defense's "operational mission" by "restricting competition, delaying contract awards, and stifling entrepreneurship and innovation." (Id. at 20). Upon the Department of Education's request, the Department of Defense provided more information on the operational, administrative, and financial burdens caused by compliance with the Act on October 16, 2025. (Id. at 21–22, 33–37).

On December 23, 2025, Secretary McMahon issued a decision approving the requested limitation as applied to the Army's twenty-four dining facility contracts. Sec'y Limit at 60078–79. In the published determination, Secretary McMahon wrote that the application of the Act to the "placement and operations of dining facilities . . . on Department of the Army installations adversely affects the interests of the United States" by imposing higher costs, arbitration delays, and various performance issues. Id. at 60078.

On January 30, 2026, Plaintiffs Melba Taylor (a blind vendor), Encore Associates, LLC (operated by Melba Taylor), David Carroll (a blind vendor), Jim Howard (a blind vendor), Timothy Jones (a blind vendor), National Association of Blind Merchants (a 501(c)(3) organization with 1,550 blind vendor members), National Federation of the Blind (a 501(c)(3) corporation and the largest national membership organization of blind persons) filed a Complaint against Defendants Department of Education and Linda McMahon in her official capacity as the Secretary of Education. (Compl. ¶¶ 14–20). Intervenors Oklahoma Department of Rehabilitation Services and

the State of Hawaii, Department of Human Services, each moved to intervene. (ECF Nos. 28, 34). The Court granted both motions (ECF Nos. 29, 35), and Intervenors filed separate Complaints against Defendants (ECF Nos. 30, 36).

Plaintiffs and Intervenors filed a Joint Motion for Summary Judgment on April 17, 2026. (ECF No. 38). On May 11, 2026, Defendants moved to dismiss for lack of jurisdiction or, in the alternative, cross-moved for summary judgment. (ECF No. 44). Plaintiffs and Intervenors responded in opposition to Defendants' Motion to Dismiss and replied in support of their own Joint Motion for Summary Judgment on May 27, 2026. (ECF No. 46). Defendants filed a Reply to Plaintiffs' and Intervenors' Joint Motion for Summary Judgment on June 24, 2026. (ECF No. 53).

### III.   DISCUSSION

#### A.   <u>Standard of Review</u>

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In a case involving review of a final agency action under the Administrative Procedure Act ("APA"), however, the standard set forth in Rule 56 "does not apply because of the limited role of a court reviewing the administrative record." <u>Hospira, Inc. v. Burwell</u>, No. GJH-14-2662, 2014 WL 4406901, at *9 (D.Md. Sep. 5, 2014). When a case is brought under the APA, the district court "sit[s] as an appellate tribunal," <u>Marshall Cnty. Health Care Auth. v. Shalala</u>, 988 F.2d 1221, 1222–23 (D.C.Cir. 1993), to decide "as a matter of law [whether] the agency action is supported by the administrative record and is otherwise consistent with the APA

standard of review," Coal. for Common Sense in Gov't Procurement v. United States,

821 F.Supp.2d 275, 280 (D.D.C. 2011).

The APA requires a reviewing court to:

> [H]old unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law . . . .

5 U.S.C. §§ 706(2)(A)–(D). The arbitrary and capricious standard requires a reviewing

court to consider whether the agency:

> Relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Judicial review under the arbitrary and capricious standard is "highly deferential, with

a presumption in favor of finding the agency action valid," but this deference "does not

reduce judicial review to a rubber stamp of agency action." Casa De Md. v. U.S. Dep't

of Homeland Sec., 924 F.3d 684, 703 (4th Cir. 2019) (quoting Friends of Back Bay v.

U.S. Army Corps of Eng'rs, 681 F.3d 581, 587 (4th Cir. 2012)).

"To comply with § 706(2)(A), an agency 'must examine the relevant data and

articulate a satisfactory explanation for its action including a rational connection

between the facts found and the choice made.'" Id. (quoting State Farm, 463 U.S. at

43). A "basic procedural requirement[] of administrative rulemaking" is that the agency

provide "adequate reasons" for its decision. Id. (quoting Encino Motorcars, LLC v.

Navarro, 579 U.S. 211, 221 (2016)). Failure to provide "enough clarity that its 'path may reasonably be discerned'" renders the agency action arbitrary and capricious. Id. (quoting Encino Motorcars, 579 U.S. at 221).

A court may not substitute its own judgment for that of federal agencies and "may not supply a reasoned basis for the agency's action that the agency itself has not given." Mallinckrodt ARD LLC v. Verma, 444 F.Supp.3d 150, 170 (D.C.Cir. 2020) (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)). An agency's decision, however, need not "be a model of analytic precision to survive a challenge." Id. (quoting Dickson v. Sec'y of Def., 68 F.3d 1396, 1404 (D.C.Cir. 1995)). Courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Id. (quoting Bowman Transp., 419 U.S. at 286).

## B.    Analysis

### 1.    Exhaustion of Administrative Remedies

As a threshold matter, the Court begins by addressing Defendants' argument that this Court lacks jurisdiction due to Plaintiffs' failure to exhaust administrative remedies. (Defs.' Mot. Dismiss & Alt., Cross-Mot. Summ. J. & Resp. Opp'n Pls.' & Intervenors' Mot. Summ. J. ["Defs.' Mot."] at 15, ECF No. 44-1).

With respect to suits against the federal government, the doctrine of sovereign immunity protects the United States from liability, except where it has expressly waived its immunity to suit. Loeffler v. Frank, 486 U.S. 549, 554 (1988). The APA waives sovereign immunity by allowing the United States to be named as a defendant and made subject to a judgment. 5 U.S.C. § 702. This waiver of sovereign immunity, however, does not apply if: (1) there are "other limitations on judicial review," or (2) "any other

8

statute that grants consent to suit explicitly or impliedly forbids the relief which is sought." Id. Further, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." McKart v. United States, 395 U.S. 185, 193 (1969) (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 (1938)). Thus, if the Act requires exhaustion of administrative remedies, and Plaintiffs and Intervenors have not exhausted those administrative remedies, the claims must be dismissed under the APA.

Here, Defendants assert that the Act establishes a set of administrative procedures to address grievances—namely, that dissatisfaction with "any action" arising out of the administration must first be heard by the SLA and, if still not satisfied, heard by an arbitration panel convened by the Secretary. (Defs.' Mot. at 16). Further, complaints by SLAs, like Intervenors, must also first be heard by an arbitration panel convened by the Secretary. (Id.). Defendants argue that because the statute explicitly states that an action is "final" and "subject to appeal and review" after arbitration, this Court may not hear the case until then. (Id. at 18). Plaintiffs and Intervenors disagree with Defendants' reading of the statute. (Pls.' & Intervenors' Opp'n Defs.' Mot. Dismiss & Cross-Mot. Summ. J. & Reply Supp. Joint Mot. Summ. J. ["Pls.' Reply"] at 9, ECF No. 46). They assert that the Act only provides the procedure for resolving two types of complaints: (1) disputes between the blind licensee and the SLA, and (2) disputes between the SLA and the federal agency controlling the property on which the vending site is located. (Id. at 10). Because the Department of Education is neither an SLA nor an agency in control of federal property, Plaintiffs and Intervenors contend that the arbitration provisions do not apply. (Id.). Further, they argue that Secretary

9

McMahon's limitation determination is reviewable because it is a binding decision published in the Federal Register. (See id. 17–18). As discussed more fully below, this Court finds Plaintiffs and Intervenors' argument more persuasive and concludes that it does have jurisdiction over the claims in this case.

Courts have generally found arbitration mandatory under the Act, requiring that remedy to be exhausted before seeking judicial review. See Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 103 (D.C.Cir. 1986) ("It is unlikely, after establishing a specific dispute resolution system and conditioning judicial review on a final agency action, that Congress contemplated that an aggrieved party could, whenever it chose, circumvent the system and seek de novo determination in federal court."). Usually, however, enforcement of exhaustion of administrative remedies occurs in cases that fall squarely in the circumstances delineated in the Act. See generally id. (concerning a challenge between blind vendors and the Secretaries of Defense, Army, Air Force, and Navy); Morris v. State of Maryland, 908 F.2d 967 (4th Cir. 1990) (Table) (concerning a dispute between blind vendors and the SLA).

That is not the case here. Here, blind vendors and SLAs are suing the Secretary and Department of Education. (See generally Compl.). While the United States Court of Appeals for the Fourth Circuit has reviewed a case against the Secretary and Department of Education, the plaintiffs in that case challenged the Secretary's arbitration panel's award in favor of the Department of the Army. See Kansas ex rel. Kansas Dep't. for Children & Families v. SourceAmerica, 826 F.App'x 272, 273 (4th Cir. 2020). A suit against the Secretary challenging her approval of a limitation under 20 U.S.C. § 107(b) is one of first impression for the Fourth Circuit. Thus, the Court

10

looks to precedent from the U.S. Court of Appeals for the D.C. Circuit and to the language of the Act itself, both of which indicate that exercising jurisdiction would be prudent.

In first looking at Plaintiffs' (blind licensees and related organizations) Complaint against Defendants, the Court turns to 20 U.S.C. § 107d-1(a). That section outlines the procedure to resolve a blind licensee's dissatisfaction with "any action arising from the operation or administration of the vending facility program." Id. While the phrase "operation or administration" may include Secretary McMahon's determination, the Department of Education's own regulations state that the SLA must afford a full evidentiary hearing to each blind vendor "dissatisfied with any State licensing agency action arising from the operation or administration of the vending facility program." 34 C.F.R. § 395.13 (emphasis added). This points to an interpretation that a challenge to Secretary McMahon's limitation does not fit into § 107d-1.

Even if the Court considered Secretary McMahon's limitation to be an action that falls within the "operation or administration" of the program, the fact that the blind licensee must go to an SLA first for an evidentiary hearing seems to pose issues. "How would a state licensing agency provide a 'full evidentiary hearing' on a complaint focused on the federal statutory authority of a federal regulator?" (Pls.' Reply at 15).

Further, if the blind licensee is not satisfied with the action taken or decision rendered by the agency hearing, he must then file a complaint with the Secretary, who shall convene a panel. 20 U.S.C. § 107d-1(a). It seems counterintuitive to have the Secretary convene a panel when the challenge is against the Secretary. Moreover, the Act states that the blind licensee will designate one member of the panel, and the State

11

licensing agency shall appoint another. Id. §§ 107d-2(b)(1)(A)–(B). The two members will then appoint a third individual to serve as chairman. Id. § 107d-2(b)(1)(C). Thus, the language of the arbitration provision points towards the arbitration being a dispute between the blind licensee and the SLA, not between the blind licensee and the Secretary of Education. In sum, the claims between Plaintiffs and Defendants do not fall neatly into the arbitration provision and, therefore, may not be subject to the arbitration requirement.

In considering Intervenors' (SLAs) Complaint against Defendants, the Court turns to § 107d-1(b) and finds a similar issue:

> Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder (including a limitation on the placement or operation of a vending facility as described in section 107(b) of this title and the Secretary's determination thereon) such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

20 U.S.C. § 107d-1(b). If the "department, agency, or instrumentality" referred to here included the Secretary, the language that proceeds would make little sense because the Secretary is not the entity who complies with the Act or the limitation—the Secretary promulgates the regulations to implement the Act and grants limitations. Instead, the "department, agency, or instrumentality" appears to refer to entities like the Department of Defense or other instrumentalities that comply with the Act by hosting blind vending facilities on federal property. As such, the Court finds that the most plausible reading is

that § 107d-1(b) concerns a dispute between an SLA and a federal agency or department's <u>compliance</u> with the Act, including the limitations as authorized by the Secretary—not the limitation itself or the Secretary's decision.

Additionally, given that the Secretary is a defined term in the Act, <u>see</u> <u>id.</u> § 107e(4), it would be reasonable to expect that Congress would have used the term "Secretary" if Congress actually intended to include a challenge to the Secretary's decision in this provision. But they do not. For example, the arbitration procedure provision states that the Secretary will convene the panel; the SLA will designate one panel member; and "the head of the Federal department, agency, or instrumentality controlling the Federal property over which the dispute arose" will designate another panel member. <u>Id.</u> §§ 107d-2(2)(A)–(B). Thus, it is more likely that the "Secretary" and the head of a department, agency or instrumentality are two distinct people. In sum, the claims between Intervenors and Defendants do not fall into the arbitration provision and, therefore, are not subject to the arbitration requirement.[2] Accordingly, the Court

---

[2] The Court also looks to its sister circuit for guidance. In <u>Randolph-Sheppard Vendors of America, Inc. v. Harris</u>, 628 F.2d 1364 (D.C.Cir. 1980) (per curiam), blind licensee organizations and blind licensees sued the Department of Health, Education and Welfare ("HEW") and the Commissioner of the Rehabilitation Services Administration. <u>Id.</u> at 1365 (Regulations under the Act were originally made by the HEW.). Despite being aware of the Act's internal arbitration procedure, the D.C. Circuit affirmed the lower court's decision on the merits even though the plaintiffs had not gone through that procedure. <u>Id.</u> at 1368. Later, in <u>Randolph-Sheppard Vendors of America v. Weinberger</u>, 795 F.2d 90 (D.C.Cir. 1986), the D.C. Circuit interpreted <u>Harris</u>, writing that the challenge there was to regulations promulgated by the Secretary of HEW and were unrelated to the "operation or administration of the vending facility program" or to contested actions of federal entities with "control of . . . Federal property," <u>id.</u> at 110 n.17. Further, "agency rulemaking pursuant to its authority under a statute, in contrast to an allegation that another agency has failed to abide by the provisions of statute, does not require further agency action to be 'final,' but is directly reviewable under the [APA] . . . ." <u>Id.</u> Although the case at bar does not concern Secretary McMahon's regulation, rather her approval of a limitation of the Act (<u>see</u> Compl. ¶¶ 122–47, ECF

13

finds that Secretary McMahon's determination concerning the limitation is a final, reviewable action and will exercise jurisdiction over Plaintiffs and Intervenors' claims.

### 2.    Observing the Procedures Required by Law

Turning to the merits, Plaintiffs and Intervenors urge this Court to set aside Secretary McMahon's determination for failure to: (1) publish supporting documentation along with her determination in the Federal Register; and (2) engage in notice and comment requirements. (Pls.' & Intervenors' Jt. Mot. Summ. J. ["Pls.' Jt. Mot."] at 49–51, ECF No. 38-1). At bottom, the Court will vacate Secretary McMahon's determination as to the limitation.

Under 5 U.S.C. § 706(2)(D), the Court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." Further, the Accardi doctrine provides that "when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid." Nader v. Blair, 549 F.3d 953, 962 (4th Cir. 2008); see also United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954).

The Act requires the Secretary to "publish [her] determination, along with supporting documentation, in the Federal Register." 20 U.S.C. § 107(b) (emphasis added). Secretary McMahon did not attach any supplemental documentation and instead supplied the reasons for her decision. See generally Sec'y Limit. Defendants

---

No. 1), the same principles apply. The challenge here is not related to the operation or administration of the vending facility program, nor to the contested actions of federal entities with control of federal property. Further, like the Secretary's authority to promulgate regulations under the Act in Harris, the Secretary's ability to approve limitations derives from the Act and should similarly "not require further agency action to be 'final,' but [should be] directly reviewable under the [APA] as 'agency action.'" Weinberger, 795 F.2d at 101 n.17; 20 U.S.C. § 107(b).

attempt to square this circle, arguing that Congress's intent was to allow the Secretary to meet this requirement by publishing the "pertinent reasons and facts" supporting her final determination. (Defs.' Mot. at 49). But "[w]here a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer." SAS Inst., Inc. v. Iancu, 584 U.S. 357, 363 (2018). A two-page determination using phrases such as "[t]he Department of the Army conveyed various examples of performance issues," Sec'y Limit at 60079, falls short of the plain language of the Act requiring "supporting documentation," 20 U.S.C. § 107(b).

The Department of Education seemingly also had a procedure for evaluating a request for a limitation. In 1984, the Department of Justice and the Federal Bureau of Prisons requested two limitations on the placement or operation of vending facilities in Federal prisons. Randolph-Sheppard Act, Initiation of Secretarial Determination, 50 FR 14005-02, 14005 (Apr. 9, 1985). There, the Department of Education indicated it would proceed "in accordance with the Procedures for the Conduct of a Secretarial Determination developed for the purpose," which included providing notice to the public that a request was pending, information on the request, the "issues for consideration," and an invitation to interested persons or organizations to submit comments on the issues for consideration. Id. at 14005–06. Given that the Secretary previously complied with notice and comment requirements, it stands to reason that Secretary McMahon would also need to do so here. But, in this case, Secretary McMahon's process to approve the current limitation did not include a notice and comment period, as was done in 1984. On this point, Defendants argue that there is no

15

indication that the procedures used in 1984 are still in effect. (Defs.' Mot. at 50). But "[a]n agency may not . . . depart from a prior policy <u>sub silentio</u> or simply disregard rules that are still on the books." <u>F.C.C. v. Fox Television Stations, Inc.</u>, 556 U.S. 502, 515 (2009). "And of course the agency must show that there are good reasons for the new policy." <u>Id.</u> Here, there is nothing in the record to suggest that the Department of Education changed its procedures. As such, the Court finds that Secretary McMahon should have complied with the previously adopted notice and comment rulemaking procedure in issuing the limitation.

It is clear that Secretary McMahon failed to follow the procedural requirements under both the Act and the Department of Education's policy. But the APA also provides that the court shall take "due account . . . of the rule of prejudicial error." 5 U.S.C. § 706. In other words, "[w]hen an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action. Instead, the error should be considered harmless." <u>United States v. Barberis</u>, 887 F.Supp. 110, 116 (D.Md. 1995) (quoting <u>E.E.O.C. v. Kimberly Clark Corp.</u>, 511 F.2d 1352, 1360 (6th Cir. 1975)).

Here, the Court finds that Secretary McMahon's failure to engage in the notice and comment process was prejudicial error. "The process of notice and comment rule-making is not to be an empty charade. It is to be a process of reasoned decision-making. One particularly important component of the reasoning process is the opportunity for interested parties to participate in a meaningful way . . . ." <u>Conn. Light & Power Co. v. Nuclear Regul. Comm'n</u>, 673 F.2d 525, 528 (D.C.Cir. 1982). The factual findings on

which Secretary McMahon relied were, by Defendants' admission, incorrect.[3] An opportunity for interested parties to provide notice and comment could have revealed this error (and potentially more) and supplied additional information and context to aid Secretary McMahon's decision-making process. Input from interested parties may have even changed the outcome of the determination entirely. Thus, this Court finds that by depriving interested parties of the procedural protections established by the Department of Education's own rules, Secretary McMahon's procedural error created substantial prejudice to the complaining parties.[4]

When a court determines that an agency has committed prejudicial error, the Court must decide whether to remand only or remand with vacatur of the agency's decision. Alabama v. Ctrs. for Medicare & Medicaid Servs., 780 F.Supp.2d 1219, 1232 (M.D.Ala. 2011) (citing Sugar Cane Growers Co-op. of Fla. v. Veneman, 289 F.3d 89,

---

[3] For example, the Department of the Army provided cost comparison data for eight out of twenty-four contracts. (Admin. Rec. at 33, ECF No. 31-2). In response to a request from the Department of Education to provide additional data, the Army responded that the other sixteen contracts were accomplished through non-competitive solicitations and that the Army negotiated directly with the SLA. (Id. at 39, 42–43). Plaintiffs and Intervenors offer evidence indicating that some of these sixteen contracts were contracted through a competitive solicitation process. (See Pls.' & Intervenors' Joint Mot. Summ. J. at 38, 38 n.3, ECF No. 38-1 (providing links to DFAC contract solicitations for Forts Leonard Wood, Devens, and Wainwright)). Defendants concede that the Fort Leonard Wood's omission from the table was an oversight and that procurement for Fort Leonard Wood "was conducted competitively and the SLA won as the Lowest Price Technically Acceptable offeror." (Defs.' Mot. Dismiss & Alt., Cross-Mot. Summ. J. & Resp. Opp'n Pls.' & Intervenors' Mot. Summ. J. at 39, ECF No. 44-1). If the Army had included it, it would have reduced the cost differential of approximately $164 million to approximately $162 million. (Id.). Secretary McMahon's determination stated the cost differential was $164 million. Sec'y Limit at 60079.

[4] The Court is uncertain as to whether Secretary McMahon's failure to provide the supplemental documentation as required by § 107(b) constituted prejudicial error. In any event, because the Court finds the Secretary committed prejudicial error as to the notice and comment requirement, it need not reach this issue.

98 (D.C.Cir. 2002)), aff'd, 674 F.3d 1241 (11th Cir. 2012). Determining whether a vacatur is appropriate requires courts to consider "the seriousness of the . . . deficiencies . . . and the disruptive consequences of an interim change." Id. "Failure to provide the required notice and to invite public comment . . . is a fundamental flaw that 'normally' requires vacatur . . . ." Heartland Reg'l Med. Ctr. v. Sebelius, 566 F.3d 193, 199 (D.C.Cir. 2009) (quoting Sugar Cane Growers, 289 F.3d at 97–98); see also Ctrs. for Medicare & Medicaid Servs., 780 F.Supp.2d at 1232 ("The seriousness of CMS's failure to engage in notice and comment rulemaking—a failure for which no explanation has been provided—counsels in favor of vacatur in this case.").

Additionally, vacating Secretary McMahon's determination would cause minimal disruption to the Department of the Army's administration of the Randolph-Sheppard priority. The Army intends to award a multi-facility dining contract without compliance with the Act as soon as August 1, 2026. (Corr. at 1, ECF No. 54). In the absence of Secretary McMahon's determination, the Army will continue to award contracts with the priority for blind vendors, as they did prior to December 23, 2025, when Secretary McMahon's determination was published. (Id.); Sec'y Limit at 60078. Thus, this is not a case in which "the egg has [already] been scrambled." Compare Sugar Cane Growers, 289 F.3d at 97–98 (finding vacatur inappropriate where agricultural program had been launched and crops had already been plowed under), with Ctrs. for Medicare & Medicaid Servs., 780 F.Supp.2d at 1232 (finding vacatur appropriate because any overpayments could be corrected in subsequent program).

Accordingly, the Court will vacate Secretary McMahon's determination as to the limitation issued to the Army on December 23, 2025.[5]

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs and Intervenors' Joint Motion for Summary Judgment (ECF No. 38) and deny Defendants' Cross-Motion for Summary Judgment (ECF No. 44). A separate order follows.

Entered this 31st day of July, 2026.

_____/s/_____
George L. Russell, III
Chief United States District Judge

---

[5] Because the Court will set aside the Secretary's decision for failure to comply with notice and comment requirements, it need not consider whether the Secretary's determination exceeded the scope of her authority or was arbitrary and capricious. (Pls.' & Intervenors' Jt. Mot. Summ. J. at 25–49). Even so, because the Secretary relied on cost comparison data for eight installations and performance issues for four installations (adding up to a total of nine unique installations) to make a determination that applied to twenty-four contracts (Admin. Rec. at 33–34, 36–37; Sec'y Limit at 60078–79, this Court would have vacated the determination in part as arbitrary and capricious.